UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH RESPORT MANUEL,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00023 EAW

# INTRODUCTION

Represented by counsel, Plaintiff Kenneth Resport Manuel ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 17), and Plaintiff's reply (Dkt. 18). For the reasons discussed below, Plaintiff's motion (Dkt. 10) is granted in part, and the Commissioner's motion (Dkt. 17) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on May 27, 2015. (Dkt. 8 at 78, 129).[1] In his application, Plaintiff alleged disability beginning June 15, 2014, due to posttraumatic stress disorder, depression, an inability to socialize or "do well with people," inability to focus, problems sleeping, high blood pressure, sleep apnea, kidney issues, and gout. (*Id.* at 78, 130-31). Plaintiff's application was initially denied on August 6, 2015. (*Id.* at 78, 143-53). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Stephen Cordovani in Buffalo, New York, on October 2, 2017. (*Id.* at 78, 94-128). On January 31, 2018, the ALJ issued an unfavorable decision. (*Id.* at 75-90). Plaintiff requested Appeals Council review; his request was denied on November 8, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-7). This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2019. (Dkt. 8 at 80). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since June 15, 2014, the alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "hypertension, congenital one kidney and chronic kidney disease, posttraumatic stress disorder, depression and obesity." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of hyperlipidemia, subluxation coccyx, gout, and sleep apnea were non-severe. (*Id*.).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 81). The ALJ particularly considered the criteria of Listings 1.02, 3.10, 6.05, 12.04 and 12.06 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p. (*Id.* at 81-82).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> no exposure to extreme heat, cold, wetness or humidity. [Plaintiff] could understand, remember and carry out simple instructions and tasks, with no supervisory duties, no independent decision-making, no strict production quotas and minimal changes in work routine and processes. [Plaintiff] could

> tolerate occasional interaction with supervisors, coworkers and the public. He further requires one additional restroom break in the morning and in the afternoon.

(*Id.* at 82). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 88).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of marker, cleaner, and small products assembler. (*Id.* at 89-90). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 90).

## II.     Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing: (1) the ALJ failed to evaluate the opinion evidence offered by William Reynolds, Psy.D.; (2) the ALJ improperly assessed Plaintiff's credibility; (3) the Appeals Council improperly rejected evidence; (4) the RFC finding is not supported by substantial evidence, because the ALJ relied on his own lay opinion; and (5) the ALJ failed to account for certain functional limitations in the RFC. (*See* Dkt. 10-1 at 1). For the reasons set forth below, the Court finds that the ALJ erred by failing to consider the opinion

offered by Dr. Reynolds, and this error necessitates remand for further administrative proceedings.

### A. Failure to Address Dr. Reynolds' Opinion

Plaintiff's first argument is that the ALJ failed to consider the opinion offered by Dr. Reynolds, a Veterans Administration psychologist. (Dkt. 10-1 at 11-14). In response, Defendant concedes that the ALJ did not consider or discuss Dr. Reynolds' opinion, but contends that the RFC, which contains mental limitations, arguably accounts for his findings. (Dkt. 17-1 at 26-27).

"An ALJ must evaluate and weigh each medical opinion." *Lugo Rodriguez v. Berryhill*, No. 3:17-CV-00093 (VLB), 2018 WL 1135330, at *5 (D. Conn. Mar. 2, 2018) (citing 20 C.F.R. § 404.1527(c)); *see also Wider v. Colvin*, 245 F. Supp. 3d 381, 388 (E.D.N.Y. 2017). "The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source." *Nolan v. Commissioner*, No. 1:17-CV-1190 (WBC), 2019 WL 342413, at *4 (W.D.N.Y. Jan. 28, 2019) (citing 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)). An ALJ's failure to properly evaluate medical opinions in the record may "hinder[] the Court's ability to determine whether the ALJ's decision is supported by substantial evidence." *Felton v. Astrue*, No. 09-CV-0538 (LEK), 2010 WL 3880628, at *5 (N.D.N.Y. Sept. 10, 2018) (remand required where ALJ failed to evaluate various medical opinions in the record, including opinions offered by psychologists), *adopted*, 2010 WL 3842808 (N.D.N.Y. Sept. 28, 2010). Specifically, an

ALJ's failure to evaluate a medical opinion is not harmless error when "the omitted medical opinion[] contradict[s] the ALJ's RFC determination." *Parks v. Colvin*, No. 15-CV-6500-FPG, 2017 WL 279558, at *4 (W.D.N.Y. Jan. 23, 2017).

On April 17, 2015, Dr. Reynolds completed a "Review Post Traumatic Stress Disorder (PTSD) Disability Benefits Questionnaire." (Dkt. 8 at 284-91). Dr. Reynolds noted Plaintiff's diagnoses for PTSD and unspecified depressive disorder, which had worsened since Plaintiff's last examination. (*Id*. at 284-85). Specifically, Plaintiff's depressive disorder was "no longer episodic" and "aggravated by the impact of the PTSD on [Plaintiff's] lifestyle." (*Id*. at 285). Plaintiff's PTSD symptoms included "[r]ecurrent, intrusive, distressing recollections of trauma, recurrent distressing dreams, and intense reactivity upon exposure to cues associated with the trauma, efforts to avoid thinking about the trauma, avoiding experiences that would arouse recollections of the trauma, hypervigilance, and an exaggerated startle response." (*Id*.). Due to his depression, Plaintiff experienced "low mood, crying spells, guilt, hopelessness, low self-esteem, diminished sense of pleasure, and suicidal ideation with no plan, intent, or history." (*Id*.). Dr. Reynolds opined that Plaintiff had "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and or/mood." (*Id*. at 286). Dr. Reynolds further noted that Plaintiff was terminated from his job as a debt collector due to "poor job performance." (*Id*. at 287). Plaintiff reported that he had "difficulty being in social settings and interacting with other people," which "continue[d] to interfere with his ability to seek new employment." (*Id*.). Dr. Reynolds indicated that Plaintiff experienced several symptoms due to his diagnoses, including: depressed mood;

anxiety; suspiciousness; panic attacks; chronic sleep impairment; mild memory loss; impairment of short- and long-term memory; difficulty in understanding complex commands; disturbances in motivation and mood; difficulty establishing and maintaining effective work and social relationships; difficulty adapting to stressful circumstances, including work or a work-like setting; inability to establish and maintain effective relationships; suicidal ideation; and persistent delusions or hallucinations. (*Id*. at 290-91).

The ALJ did not discuss the opinion offered by Dr. Reynolds. Regarding Plaintiff's mental functional limitations, the ALJ discussed the opinions offered by the consultative examiner, Christine Ransom, Ph.D., and the state-agency reviewing psychologist, Dr. Reddy. (*Id*. at 87-88). The ALJ gave "partial weight" to Dr. Ransom's opinion that Plaintiff would have mild difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress due to mild PTSD. (*Id*.). The ALJ gave "little weight" to Dr. Reddy's opinion that Plaintiff's mental impairments were non-severe, as the record supported that Plaintiff had some limitations in mental functioning. (*Id*. at 88). The ALJ also discussed Plaintiff's mental health treatment at the VA Hospital, including that Plaintiff treats with a psychiatrist, attends group and individual counseling, and had some normal mental status examinations (*see, e.g., id*. at 84-85), but this discussion does not address the specific limitations identified by Dr. Reynolds.

As noted above, the ALJ assessed an RFC that includes some mental limitations, including limiting Plaintiff to work requiring him to understand, remember, and carry out only simple instructions and tasks, with no supervisory duties, no independent decision-making, no strict production quotas and minimal changes in routine work and processes,

and only occasional interaction with co-workers, supervisors, and the public.  (*Id.* at 82).  While the RFC is consistent with Dr. Ransom's opinion of Plaintiff's mental limitations, it is inconsistent with Dr. Reynolds' opinion.  Dr. Reynolds opined that Plaintiff had several mental limitations as a result of his PTSD and depressive disorder, which either conflict with or are not included in the RFC.  For example, Dr. Reynolds opined that Plaintiff experiences mild memory loss and has impaired short- and long-term memory, which are not accounted for in the RFC.  Further, Dr. Reynolds noted that Plaintiff has difficultly interacting with others and difficulty establishing and maintaining effective work and social relationships, which appear to conflict with the RFC to the extent it requires occasional interaction with co-workers, supervisors, and the public.  Therefore, the ALJ's failure to consider Dr. Reynolds' opinion "was not harmless, because the limitations opined in Dr. Reynolds' opinion were quite restrictive and could have resulted in a finding of disability – or at the very least a more restrictive RFC finding – if given weight by the ALJ."  *See Lewis v. Colvin*, No. 1:14-CV-00794(MAT), 2017 WL 2703656, at *2 (W.D.N.Y. June 23, 2017) (remanding for further administrative proceedings where the ALJ failed to consider the opinion offered by Dr. Reynolds, who opined that the plaintiff's PTSD caused difficulties in social and occupational functioning).

Because the ALJ did not weigh and discuss the limitations assessed by Dr. Reynolds, the Court is unable to evaluate whether the ALJ's determination is supported by substantial evidence.  Accordingly, remand is required.  *See Jackson v. Colvin*, No. 1:14-CV-00055(MAT), 2016 WL 1578748, at *4 (W.D.N.Y. Apr. 20, 2016) (finding remand was required where the ALJ failed to discuss opinion evidence offered by consultative

examiners, and explaining that "[o]n remand, the ALJ must fully consider every medical source opinion in the record, including those from the consulting sources, in determining plaintiff's claim."). On remand, the ALJ should ensure that he properly considers and discusses all the opinion evidence in the record, including the opinion offered by Dr. Reynolds.

### B. Plaintiff's Remaining Arguments

As set forth above, Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 10) is granted to the extent that the matter is remanded for further administrative

proceedings. The Commissioner's motion for judgment on the pleadings (Dkt. 17) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: May 26, 2020
        Rochester, New York